Isidore CHERNO, Trustee in Bankruptcy, Appellant,

v.

ENGINE AIR SERVICE, INC., Appellee.

In the Matter of THIEM SUPPLY CO., Inc., Bankrupt.

No. 348, Docket 28648.

United States Court of Appeals Second Circuit.

Argued March 12, 1964.

Decided April 7, 1964.

I. Robert Bassin, Jamaica, N. Y., for appellant.

Emerson A. Swartz, Garden City, N. Y., for appellee.

Before LUMBARD, Chief Judge, SMITH, Circuit Judge, and LEVET, District Judge.*

J. JOSEPH SMITH, Circuit Judge:

The Trustee in Bankruptcy of the Thiem Supply Co., Inc. petitioned the bankruptcy referee for an order expunging the claim of the debtor's landlord, Engine Air Service, Inc., for $1750 for use and occupancy of the premises by the trustee. The trustee's petition also requested that the landlord be directed to turn over to the trustee a security deposit of $3500. The referee dismissed the petition on the ground that he lacked summary jurisdiction to try the issues raised by the pleadings. The United States District Court for the Eastern District of New York, Walter Bruchhausen, C. J., confirmed the referee's order, and the trustee has appealed to this court. We

find no error and affirm the order of the District Court.

An involuntary petition in bankruptcy was filed against the Thiem Supply Co., Inc. on January 24, 1958 and an order of adjudication was entered on March 14, 1958. On May 28, 1958 the landlord filed a claim of $1750 for the use and occupancy of the premises from January 15, 1958 to May 14, 1958. The trustee counterclaimed to recover a security deposit of $3500, which he alleged had been commingled with the landlord's general funds in violation of § 233 of the New York Real Property Law, McKinney's Consol. Laws, c. 50.[1]

On December 15, 1956 Engine Air Service, Inc. leased the premises at 199 E. 2nd St., Mineola, New York to a partnership of Edward F. Steffan and Eugene Thiem d/b/a The Thiem Supply Co. The partnership deposited $3500 with the landlord as security for the performance of the terms of the lease. The landlord concedes that this $3500 was deposited in the landlord's general account and used to satisfy general obligations of the landlord. Subsequently, the partnership was dissolved, and the landlord released Steffan from all liability under the lease. Thiem then incorporated the business under the name of Thiem Supply Co., Inc. and continued to occupy the leased premises. However, the lease was never assigned to the bankrupt, Thiem Supply Co., Inc. Under the terms of the lease, there could be no valid assignment unless the landlord received a recordable instrument in which the assignee agreed to assume all the burdens and obligations of the lessee. The land-

---

* Sitting by designation.

1. "§ 233. Money deposited or advanced for use or rental of real property

"Whenever money shall be deposited or advanced on a contract for the use or rental of real property as security for performance of the contract or to be applied to payments upon such contract when due, such money, with interest accruing thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same, but may be disposed of as provided in section thirteen hundred and two-a of the penal law. Any provision of such a contract whereby a person who so deposits or advances money waives any provision of this section is absolutely void."

lord alleges that it has received no such instrument. From time to time the rent was not paid, and on January 14, 1958 the landlord secured a judgment of $6,281.03 against Eugene Thiem for overdue rent.

■ The issue in this case is whether the bankruptcy court has summary jurisdiction to adjudicate title to the security deposit currently held by the landlord. We hold that the bankruptcy court does not and that the trustee must resort to a plenary suit.

The trustee has advanced two theories as a basis for summary jurisdiction over the deposit. One is that the deposit is the property of the bankrupt's estate. The second is that the landlord has consented to the exercise of summary jurisdiction by filing a claim.

■ The security deposit is being held adversely to the bankrupt's estate under a claim of right, and it is well settled that a bankruptcy court lacks jurisdiction to resolve in a summary proceeding a controversy over property held adversely to the bankrupt's estate unless the adverse claimant consents or unless the adverse claim is merely colorable. Harrison v. Chamberlin, 271 U.S. 191, 193, 46 S.Ct. 467, 70 L.Ed. 897 (1926); 2 Collier on Bankruptcy 468–9 (14th ed. 1962). It is plain that under New York law the landlord forfeited its right to the security deposit by commingling it with its general funds. See Sommers v. Timely Toys, Inc., 209 F.2d 342, 343 (2 Cir. 1954); Fore Improvement Corp. v. Selig, 278 F.2d 143 (2 Cir. 1960). But it is far from clear that the deposit is the property of the bankrupt estate. The deposit was made by the partnership, and the lease has never been assigned to the bankrupt corporation. Whether there has been an attornment, as the trustee claims, and whether the deposit has been credited to the tenant for unpaid rent prior to bankruptcy, as the landlord claims, are substantial issues that should be resolved in a plenary suit. A claim is merely colorable if "on its face made in bad faith and without any legal justification." Harrison v. Chamberlin, supra, 271 U.S.

at 194, 46 S.Ct. at 468, 70 L.Ed. 897. The landlord's claim to the deposit does not appear to be made in bad faith or to be devoid of any legal justification.

■ The trustee's second theory is that by filing a claim, the landlord has consented to the summary jurisdiction of the bankruptcy court to render an affirmative judgment in favor of the trustee on a counterclaim. Were these mutual claims, the trustee's contention would be correct. See Nortex Trading Corp. v. Newfield, 311 F.2d 163 (2 Cir. 1962); Conway v. Union Bank of Switzerland, 204 F.2d 603 (2 Cir. 1953); Inter-State National Bank of Kansas City v. Luther, 221 F.2d 382 (10 Cir. 1955). Cf. In re De Gregorio, 219 F.Supp. 783 (S.D.N.Y. 1963). But these are not mutual claims. The landlord's postbankruptcy claim is not predicated on the lease but on its equitable right to compensation for the trustee's use and occupancy of the premises. The trustee's prebankruptcy claim is predicated on the lease and on violation of § 233 of the New York Real Property Law. The landlord's claim is an administration expense and bears no relation to the lease. S & W Holding Co. v. Kuriansky, 317 F.2d 666, 668 (2 Cir. 1963). Hence the mutuality required by § 68 of the Bankruptcy Act, 11 U.S.C. § 108, for a valid set-off or counterclaim is lacking, and the filing of the postbankruptcy claim did not constitute consent to the summary adjudication of the unrelated prebankruptcy claim. United States v. Roth, 164 F.2d 575, 578 (2 Cir. 1948); Standard Oil Co. of N. J. v. Elliot, 80 F. 2d 158, 159 (4 Cir. 1935); In re House of Gus Holder, 91 F.Supp. 841, 844–845 (D.C.N.J.1950). The only case to which our attention has been directed that suggests that filing of a postbankruptcy claim constitutes consent to summary jurisdiction for the adjudication of a prebankruptcy counterclaim is In re Morrison-Barnhart Motors, 142 F.Supp. 845 (N.D.Ohio 1956). The language to that effect is only dictum and on the point here involved is unsupported by the authorities cited for the proposition.

The order appealed from is affirmed.