In the Matter of SEATRADE CORPORATION, Kulukundis Maritime Industries, Inc., Tramp Shipping & Oil Transportation Co., A. H. Bull Steamship Co., A. H. Bull & Co. (Inc.), American Tramp Shipping Development Corporation, Messenian Shipping Corporation, Star Line Agency, Inc., Bankrupts.

Petition of Arthur L. LIMAN, Trustee in Bankruptcy,

v.

The UNITED KINGDOM MUTUAL STEAMSHIP ASSURANCE ASSOCIATION.

No. 63 B 216.

United States District Court
S. D. New York.
March 28, 1969.

Edward J. Ryan, Referee in Bankruptcy.

Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, for trustee by Ambrose Doskow, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for U. K. Mutual SS by Marshall P. Keating, Daniel J. Dougherty, New York City, of counsel.

## OPINION

EDELSTEIN, District Judge.

Eight bankrupts filed petitions for reorganization under Chapter X of the Bankruptcy Act on May 21, 1963. They were all in the shipping business, under common control. In 1966 the Court ordered a consolidation of the proceedings and a merger of the assets and liabilities of all eight debtors.[1] After disapproval of a plan of reorganization and liquidation submitted by the Chapter X trustees, there was an adjudication in bankruptcy and the present trustee was appointed on May 2, 1968.

Petitioner, United Kingdom Mutual Steamship Assurance Association ("U.K. Club"), filed a claim in the Chapter X proceeding against one of the bankrupts, Seatrade Corporation, for the sum of $43,028.65, allegedly due on unpaid calls or premiums under policies of marine protection and indemnity insurance covering three vessels. The trustee then initiated the present proceeding before the referee by alleging that while those policies were in effect, two members of the crew of one of the vessels sustained personal injuries for which they received awards of damages, (hereinafter "the counterclaim"). The proceeding was initiated by order directing U.K. Club to show cause why it should not be directed to indemnify the bankrupt estate against the losses sustained as a result of those personal injury claims.

The vessel on which the two injured seamen were employed was sold in a foreclosure proceeding in the United States District Court for the District of Maryland. The seamen filed intervening libels in that proceeding and were paid out of the proceeds of the sale of the vessel pursuant to settlement agreements which were approved by the Admiralty Court. The attorneys who represented the Chapter X trustees in defense of the libels and in the settlements have filed an application with this court for compensation for their services. The trustee seeks indemnification in the amount of the sums paid to the injured seamen in settlement of their claims and the amount of compensation which is to be paid by the estate to those attorneys. U.K. Club disputes the effectiveness of the policies and denies liability.

The trustee alleged that the referee in bankruptcy possessed summary jurisdiction over the counterclaim of the trustee. Hearings were held on this issue before

1. 255 F.Supp. 696 (S.D.N.Y.) aff'd. 369 F.2d 845 (1966).

the Hon. Edward Ryan, Referee in Bankruptcy, and he found that summary jurisdiction of the Bankruptcy Court existed. Petitioner now seeks a review.

■ It is clear to this court that U.K. Club filed a claim in the reorganization proceeding for calls or premiums due on its policies and that the present claim of the trustee for indemnity is based upon those policies. Accordingly, the trustee's claim is in the nature of a compulsory counterclaim.[2]

■ Given this state of facts, the narrow legal question to be determined here is whether a claimant[3] consents to the summary jurisdiction of the bankruptcy court for any and all claims arising out of the same subject matter or transaction as his original claim merely by virtue of his having filed that claim in bankruptcy.

This court holds that under these circumstances summary jurisdiction will lie.

Petitioner tries to distinguish the most recent Supreme Court case of Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) away by limiting it to voidable preferences.[4] The disputed

issue in *Katchen* was indeed whether a "bankruptcy court has summary jurisdiction to order the surrender of voidable preferences asserted and proved by the trustee in response to a claim filed by the creditor who received the preferences."[5] There is nothing, however, to intimate that Katchen is to be limited just to counterclaims involving a preference. On the contrary, a footnote sets out the holding of the Court of Appeals for the 10th Circuit.[6] It is clear that the Court of Appeals went beyond the narrow view sought by petitioner. The Supreme Court affirmed that Court of Appeals' holding. What is more, the cases cited by the court in *Katchen*, as well as others, do not necessarily limit the Bankruptcy Court's summary jurisdiction to preference issues, even though many of those cases do deal with preferences. See, for example, Nortex Trading Corp. v. Newfield, 311 F.2d 163 (2d Cir. 1962) (counterclaim allegedly consisting of a voidable preference) where Judge Kaufman summarized the law as follows:

"The filing by *Nortex* of its proof of claim is analogous to the commencement of an action within the bank-

2. Rule 13, Fed.R.Civ.P. Counterclaim and Cross-Claim.
 (a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action.

3. § 2. sub. a(7) of the Bankruptcy Act provides for either express or implied consent to summary jurisdiction.

4. The case of In re Miracle Mart, Inc., 293 F.Supp. 417 (S.D.N.Y.1968) relied on by petitioner is readily distinguishable. *Ab initio*, that case involved a permissive counterclaim and not a compulsory one. Moreover, there were peculiar facts

there involving a merger and a claim filed at a time when there was no right of set-off. In the instant 'case U.K. Club knew at the time it filed, or should have known, that there might be a counterclaim against it based on the insurance indemnity agreement in issue.

5. *Katchen* at 325, 86 S.Ct. at 470.

6. The footnote reads in relevant part: " * * * Several Courts of Appeals have upheld the summary jurisdiction of the referee over counterclaims arising out of the same transaction as the creditors claim, but have stated that such jurisdiction does not extend to permissive counterclaims arising out of distinct transactions. * * * The decision presently under review upholds summary jurisdiction to order return of a preference whether or not the preference relates to the same transaction as the claim but declines to extend such jurisdiction to unrelated counterclaims not involving a preference, set-off, voidable lien or a fraudulent transfer." at 326 Fn. 1, 86 S.Ct. 471.

ruptcy proceeding. * * * The trustee's petition is in the nature of an answer incorporating an affirmative request for relief by way of surrender of the preference. It has often been recognized that counterclaims by the trustee against a claimant are within the summary jurisdiction of the bankruptcy court * * * The claimant is deemed to consent to the jurisdiction of the court upon filing its proof of claim."

See also Inter-State Nat'l Bank of Kansas City v. Luther, 221 F.2d 382 (10th Cir. 1955) ("[B]eing of the view that the Bank impliedly consented to the jurisdiction of the court, the counterclaim was maintainable under Rule 13(b) F.R.Civ.P. whether compulsory or permissible. * * * We hold, therefore, that the court acquired jurisdiction of the counterclaim by implied consent and that it was authorized to adjudicate the preference and give judgment for recovery of the same." (at 390)); In re Solar Manufacturing Corp., 200 F.2d 327 (3rd Cir. 1952).

Other cases, not dealing with preference counterclaims lend further support to the view that a claimant who files a proof of claim, "by presenting [his] claim * * * subject[s] [himself] to all the consequences that attach to an appearance," and that one of those consequences is summary jurisdiction over compulsory counterclaims. Alexander v. Hillman, 296 U.S. 222, 241, 56 S.Ct. 204, 210, 80 L.Ed. 192 (1935); Chase National Bank of City of New York v. Lyford, 147 F.2d 273 (2d Cir. 1945); Columbia Foundry Co. v. Lochner, 179 F.2d 630 (4th Cir. 1950) ("Here the Trustee is called upon to pay for goods sold to the bankrupt which * * * must be assumed to have been so defective as to cause the bankrupt a loss greatly in excess of the purchase price of the merchandise. The counterclaim relates to the very subject matter of the claim itself" (at 633)); In re Farrell Publishing Corp., 130 F.Supp. 449 (S.D. N.Y.1955) (counterclaim based on claimant's inferior work product) ("General policy and analogy call for a finding here of implied consent that the bankruptcy court exercise summary jurisdiction to render an affirmative judgment on the counterclaim" at 452); In re De Gregorio, 219 F.Supp. 793 (S.D.N.Y.1963).

The learning on the subject too leans toward this view. As Weintraub & Levin say in their handbook, Practical Guide to Bankruptcy and Debtor Relief (Prentice-Hall 1964):

Ch. 6 Proof and Allowance of Claims.

§ 7 Hint. Filing of proof of claim is a consent to the jurisdiction of the bankruptcy court. Before filing a proof of claim the claimant should remember that this filing subjects claimant to the summary jurisdiction of the court. If claimant has received a preference *or if bankrupt contends claimant is indebted to him, the referee will try these issues. * * * In the latter instance the proof of a counter-claim may result in a judgment against the claimant.*" pp. 89–90. (emphasis added)

The rationale behind allowing the bankruptcy court summary jurisdiction in this matter is at least as compelling as the case law. Expeditious administration of bankrupt estates and an avoidance of multiplicity of litigation are two reasons, at least, compelling a finding of consent in these circumstances.[7] A third is well stated in 4 Collier on Bankruptcy 951 (14th ed.)

"One who files a proof of claim should be held to acquiesce in the ad-

---

7. "Permitting the exercise of summary jurisdiction will bring about the quick disposal of issues that arise during the progress of the proceeding and this policy is a sound one. Moreover, the filing of a claim may be analogized to the commencement of an action in the federal court where a compulsory counterclaim would have to be pleaded. Circuity and multiplicity of action would be reduced and this value should be considered in the absence of strong authority of policy dictating lack of jurisdiction." 1 Collier on Bankruptcy 265 (14th ed.)

judication of any proper set-off or counterclaim even to the extent of a judgment thereon, since as pointed out in the *Kresge* case,[8] the claimant puts himself in a position, should his interests warrant, to challenge the receiver's or trustee's acts and the demands of others claiming as creditors. He should not be permitted to claim the benefits of such a position, and yet maintain a favored advantage as against the trustee or receiver, compelling that officer to resort to a plenary action to collect on a claim that is a proper subject of set-off or counterclaim. In Katchen v. Landy, the Supreme Court allowed the exercise of summary jurisdiction on the basis of the filing of a proof of claim where the trustee sought to recover a voidable preference from the creditor. The basis for the holding was application of § 57g requiring disallowance of a claim asserted by one who had received a voidable preference. While § 57g is not applicable to the set-off situation of § 68, many of the same reasons as herein expressed are present in both cases. It would certainly appear likely that the *bankruptcy court may proceed by way of summary jurisdiction where a compulsory counterclaim is involved, and it should not be prohibited from so proceeding even if the counterclaim is merely permissive."* (emphasis added)

In the final analysis this court sees no good reason why summary jurisdiction should not lie regardless of whether the counterclaim is compulsory or permissible.[9] Insofar as this case involves a compulsory counterclaim and the law is reasonably clear as to a compulsory counterclaim there is no need to belabor the latter proposition.

This court holds that by filing a proof of claim a claimant consents to summary jurisdiction of the bankruptcy court for all compulsory counterclaims, be they relevant to voidable preferences or any other matter.

Petition for review denied.

So ordered.

---

**8.** Florance v. Kresge, 93 F.2d 784 (4th Cir. 1938).

**9.** "The same reasons of policy which have impelled the courts to permit affirmative relief on compulsory counterclaims would seem to dictate the same result on permissive counterclaims. The courts must weigh the advantages of expedition in the administration of bankrupt estates against the inconvenience and procedural rights of claimants. If that is done the former should prevail for in the last analysis, while the claimant may be deprived of his procedural right to a plenary trial in a more convenient forum, there will be no denial of due process of law." "Resolution of all issues in a single litigation is a most desirable objective and makes efficent use of judicial machinery. Where the aid of the bankruptcy court is invoked, whether by the filing of a proof of claim or otherwise, and a counterclaim, compulsory or permissive, is pleaded by the trustee, the bankruptcy court should exercise the power to grant affirmative relief to the trustee if appropriate in the circumstances. The trial of all issues by the bankruptcy court avoids multiplicity and circuity of action. It makes it unnecessary to split the trustee's counterclaim and eliminates the need for offensive action by the trustee in another court with respect to the excess. Obviously, the determination of all issues by the bankruptcy court tends to expedite the administration of the bankrupt estate and carries out the Congressional purpose of Section 2a(7)." Seligson & King, Jurisdiction & Venue in Bankruptcy, 36 J.Nat'l Assn. of Ref. 73, 83 (1962).